UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREY ROSE,

                    Petitioner,                    Case No. 2:17-cv-10836
                                                   Hon. Paul D. Borman
v.

CATHERINE BAUMAN,

                    Respondent.
_____/

**OPINION AND ORDER (1) DENYING RESPONDENT'S MOTION TO DISMISS [Dkt. 11], (2) DENYING PETITION FOR WRIT OF HABEAS CORPUS [Dkt. 1], (3) DENYING CERTIFICATE OF APPEALABILITY, AND (4) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

This is a habeas case filed by a Michigan prisoner under 28 U.S.C. § 2254.

Petitioner Karey Rose pled guilty in the Oakland Circuit Court to three counts of

armed robbery, MICH. COMP. LAWS § 750.529, one count of first-degree home

invasion, MICH. COMP. LAWS § 750.110a, three counts of unlawful imprisonment,

MICH. COMP. LAWS § 750.349b, one count of felon in possession of a weapon,

MICH. COMP. LAWS § 750.224f, one count of unlawful driving away of an

automobile, MICH. COMP. LAWS § 750.413, and eight counts of possession of a

firearm during the commission of a felony (felony-firearm), MICH. COMP. LAWS §

750.227b. As a result of these convictions, Petitioner was sentenced as a fourth-

time habitual felony offender to a controlling term of 45-to-75 years' imprisonment

for the armed robbery convictions, lesser concurrent terms for the other convictions, and  consecutive two-year terms for the felony-firearm convictions.

The pro se petition raises four claims: (1) the trial court erred in denying Petitioner's motion to withdraw his guilty plea, (2) Petitioner was denied his right to be present at a post-conviction hearing, (3) Petitioner's plea was coerced by an unfulfilled promise of a more lenient sentence, (4) the trial court committed misconduct by participating in the plea negotiations.

Respondent filed a motion to dismiss the petition on the grounds that Petitioner's second, third, and fourth claims are unexhausted because they were not presented to the Michigan Court of Appeals during his direct appeal. Despite Petitioner's failure to exhaust his state court remedies with respect to these claims, the petition will be denied because all of Petitioner's claims lack merit. The Court will also deny Petitioner a certificate of appealability and deny permission to proceed on appeal in forma pauperis.

## I. Background

The charges against Petitioner arose after he and another individual broke into the home of a family on the night of January 14, 2015. The two men were armed with guns and wearing masks. They restrained the family members, which included two young children, and stole items from the home. The two men drove

away in a car belonging to the victims. Police officers located Petitioner's accomplice, Keith Singler, by tracking one of the cell phones stolen from the residence. Singler made statements implicating Petitioner during police questioning.

At a pretrial hearing held on May 21, 2015, Petitioner's trial counsel indicated that the parties had calculated the sentencing guideline range for the offenses. Dkt. 12-3, at 3. The trial court then indicated that it had "an exhaustive discussion with counsel at the bench in connection with this case." Id., at 4. The court indicated that it was making a *Cobbs*[1] evaluation that the sentence would not exceed the bottom two-thirds of the sentencing guideline range. Id. The court also indicated that Petitioner faced mandatory consecutive two-year terms for the felony-firearm offenses. Id., at 5.

The court indicated that at the time of sentencing it was possible that it would go below the *Cobbs* evaluation, but it did not foresee doing so. Id., at 7. The court stated, "This is obviously a very serious case. I'm going to want to hear from - Mr. Weiner gave me a bunch of facts that certainly support a more lenient sentence from Mr. Rose, the People have given me some facts to be on the more strict side, and I wanted to be able to look at the victim's impact statement, his

---

[1] See *People v. Cobbs*, 443 Mich. 276 (1993) (allowing a Michigan trial court to make a preliminary sentence evaluation to facilitate plea negotiations).

prior history, how he's done on parole, all those things." Id., at 7.

Defense counsel asked Petitioner if he wished to proceed with the plea, and Petitioner indicated his desire for more time to consider his options. Id., at 7-8. The court scheduled a pre-trial hearing for the next week. Id., at 8.

One week later, on May 28, 2015, Petitioner indicated his desire to enter a guilty plea. Dkt. 12-4, at 3. Petitioner was placed under oath. Id., at 4. He indicated that he was twenty-six years old, and that he could read and write. Id. Petitioner indicated his satisfaction with his counsel's advice. Id. Petitioner stated that he had two years of college. Id., at 5.

The court read the twenty-one felony counts and the maximum penalties for each charge. Id., at 5-8. Petitioner was informed that his two-year felony-firearm sentences would be served consecutively with his other sentences and that the court had discretion to impose consecutive sentences for the other charges a well. Id., at 8-9. Petitioner indicated his understanding. Id., at 9.

The court again explained its *Cobbs* evaluation that any term of incarceration would not exceed the bottom two-thirds of the guideline range, and it again explained that no promises were being made with respect to whether the sentences would be concurrent or consecutive. Id., at 9-10. Petitioner indicated his understanding. Id., at 10.

The court then informed Petitioner of all of the trial and appellate rights he would be waiving by entering a guilty plea. Id., at 10-12. Petitioner indicated his understanding. Id. Petitioner then affirmed his understanding that by pleading guilty he would be giving up any claim that the plea was the result of promises or threats that were not disclosed to the court. Id., at 11. Petitioner denied that anyone had threatened him or placed pressure on his to make him plea guilty. Id., at 12. Petitioner indicated that he was not promised anything that was not disclosed on the record. Id. Petitioner stated that it was his own choice to plead guilty. Id.

Petitioner then testified that the offense occurred in West Bloomfield in Oakland County on January 14, 2015. Id., at 11-13. Petitioner testified that he entered a home with another individual for the purpose of committing a larceny. Id., at 13. Petitioner entered the home through an open door located in the garage, and he was armed with a pistol. Id., at 14. Petitioner took computers, electronics, jewelry, a cell phone, and a wallet from the home. Id., at 15. Petitioner and his accomplice restrained the five family members while they were in the home. Id., at 16-17. Petitioner admitted that he had at least four prior felony convictions. Id., at 18-19.

The attorneys acknowledged that there was no plea agreement, but there was a representation by the Court pursuant to *Cobbs* as to Petitioner's possible

sentence. Id., at 20. The attorneys stated that they were not aware of any promises, threats or other inducements other than those placed on the record to induce Petitioner's plea. Id. The court found that Petitioner's guilty plea was understanding, voluntary, and accurate. Id., at 21.

At the sentencing hearing Petitioner voiced concern after he was informed that he would be required to register as a sex offender. Dkt. 12-5, at 10. The trial court explained that it was a required term for his conviction of restraining a minor child. Id., at 11-12. The court sentenced Petitioner under the terms of the *Cobbs* evaluation to 45-to-75 years' imprisonment for the armed robbery convictions, lesser concurrent terms for the other convictions, and consecutive two-year terms for the felony-firearm convictions. Id., at 28.

On March 23, 2016, through appointed appellate counsel, Petitioner moved to withdraw his guilty plea. Counsel argued that Petitioner was never informed by his trial counsel or by the court that he would be required to register as a sex offender as a result of his pleading guilty to two counts of restraining a child, and therefore he should be allowed to withdraw his guilty plea with respect to all of the charges. Dkt. 12-6, at 3. The prosecutor argued that the remedy should be to allow Petitioner to withdraw his plea only with respect to the two offenses at issue. Id., at 10. The court accepted the prosecutor's argument, and it set aside the two counts

requiring sex offender registration and the two corresponding felony-firearm

counts. Id., at 11-12. The court found that Petitioner's guilty plea with respect to

the other counts was otherwise valid. Id.

Petitioner's appellate counsel then filed a delayed application for leave to

appeal in the Michigan Court of Appeals, raising the following claims:

> I. Mr. Rose's attorney failed to advise him that if he pleaded guilty to
> unlawful imprisonment, he would be required to register as a sex
> offender, therefore his plea was not a knowing and "understanding" plea.
> Mr. Rose's attorney failed to render effective assistance of counsel by
> failing to advise him that if he pleaded guilty to unlawful imprisonment,
> he would be required to register as a sex offender.
>
> II. Mr. Rose is entitled to specific performance of a prosecutor sentence
> recommendation of a cap of 17 years in prison where a promise to make
> a sentence recommendation was made by the prosecutor but never
> delivered.

On June 7, 2016, the Michigan Court of Appeals issued an order denying the

application for leave to appeal "for lack of merit in the grounds presented." *People

v. Rose*, No. 332684 (Mich. Ct. App. June 7, 2016).

Petitioner subsequently filed a pro se application for leave to appeal in the

Michigan Supreme Court. The pro se pleading is difficult to decipher, but it

appears to have raised at least nine claims: (1) Petitioner's guilty pleas to unlawful

imprisonment were not knowingly made where his attorney failed to advise him he

would be required to register as a sex offender, (2) Petitioner's attorney rendered

ineffective assistance of counsel by failing to advise him that would be required to register as a sex offender, (3) Petitioner was denied his right to due process when the trial court would not allow him to withdraw his guilty pleas at sentencing due to extensive fraud upon the courts, plain error, misrepresentation, abuse of discretion, and entrapment, (4) Petitioner's plea agreement was illusory, (5) Petitioner was denied due process where the trial judge participated in the plea bargaining process, (6) Petitioner's guilty plea was a product of police and prosecutorial misconduct, entrapment, and intentional use of perjured testimony, (7), Petitioner was denied his right to withdraw his invalid guilty pleas, (8) Petitioner was denied his right to effective assistance of appellate counsel, and (9) Petitioner's trial counsel had a conflict of interest that induced a plea based on coercion, misrepresentation, fraud, and duress and rendered counsel ineffective in violation of the Sixth Amendment.

The Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Rose*, 887 N.W.2d 801 (December 21, 2016) (table).

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court adjudication is "contrary to" Supreme Court precedent under § 2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result]." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).

Under the "unreasonable application" clause of § 2254(d)(1),

> even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*White v. Woodall*, ___ U.S. ___, 134 S. Ct. 1697, 1702, 188 L. Ed. 2d 698 (2014)

(citations, quotation marks, and alterations omitted).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, ___ U.S. ___, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015). "Federal habeas review thus exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011)). "[W]hether the trial judge was right or wrong is not the pertinent question under AEDPA." *Renico v. Lett*, 559 U.S. 766, 778 n.3 (2010). The question is whether the state court's application of federal law was "objectively unreasonable." *White*, 134 S. Ct. at 1702. In short, the standard for obtaining federal habeas relief is "difficult to meet . . . because it was meant to be." *Burt v. Titlow*, ___ U.S. ___, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013)(internal quotation marks omitted).

## III. Analysis

A. Exhaustion

Respondent asserts that the petition should be dismissed without prejudice because Petitioner has not exhausted his state court remedies with respect to his second through fourth habeas claims. It is true that these three claims were only

presented to the Michigan Supreme Court and not to the Michigan Court of Appeals and are therefore unexhausted. See *Thompson v. Bell*, 580 F.3d 423, 438 (6th Cir. 2009). Nevertheless, lack of exhaustion is not a jurisdictional issue, and the Court may deny relief on the merits with respect to unexhausted issues. See 28 U.S.C. § 2254(b)(2). Here, because it can be determined that Petitioner's unexhausted claims are without merit, the Court will deny Respondent's motion to dismiss and instead deny the petition on the merits.

## B. Plea Withdrawal

Petitioner's first claim asserts that he was entitled to withdraw his guilty plea with respect to all of the charges because he was not informed of the requirement that he register as a sex offender for his two convictions for restraining a minor child. The form order by the Michigan Court of Appeals denying relief "for lack of merit in the grounds presented" constitutes an adjudication on the merits subject to the deferential standard of § 2254(d). See *Werth v. Bell*, 692 F. 3d 486, 492-94 (6th Cir. 2012). The claim is without merit because nothing in clearly established Supreme Court law prevented the trial court from remedying the alleged error by vacating the counts at issue but allowing the guilty plea to stand with respect to the other charges.

To be valid, a guilty plea must be a voluntary, knowing, and intelligent act. *Brady v. United States*, 397 U.S. 742, 748 (1970). A plea is valid if it is "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748. Courts must consider all the relevant circumstances when determining whether a plea was voluntary. *Id*. at 749. Among the factors to be considered are whether the defendant appreciated the consequences of his waiver of constitutional rights, whether he waived his rights without being coerced to do so, and whether he understood the rights that he was surrendering by pleading guilty. *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009). A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his or her own counsel, must stand unless induced by threats, misrepresentation, or by improper promises. *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984).

Clearly established law did not require the trial court to set aside the four convictions associated with the requirement for Petitioner to register as a sex offender, let alone all of the charges to which Petitioner pled guilty. A criminal defendant "need only be [made] aware of the direct consequences of the plea" and a trial court "is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea." *King v. Dutton*, 17 F.3d 151, 153

(6th Cir. 1994). The Sixth Circuit has ruled that "[m]atters that are beyond the control or responsibility of the [trial] court are collateral consequences of a conviction or plea." *United States v. Cottle*, 355 F. App'x 18, 20 (6th Cir. 2009) (quoting *El-Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 2002)).

The Sixth Circuit has concluded on several occasions that the requirement to register as a sex offender is a collateral one that need not be disclosed to the defendant in order for a plea to be valid. See, e.g., *Blumenthal v. Curley*, No. 12-1221, 2013 U.S. App. LEXIS 26018, 2013 WL 7141279, at *2 (6th Cir. Apr. 1, 2013) (citing *United States v. Cottle*, 355 F. App'x 18, 21 (6th Cir. 2009)). In *Cottle*, the Sixth Circuit reasoned that sex-offender registration is a collateral consequence because it is governed by state and federal law and is "beyond the control or responsibility of the court." *Cottle*, 355 F. App'x at 20. Consequently, nothing in clearly established Supreme Court law required the trial court to inform Petitioner of the sex offender registry requirement in order for the guilty plea to be valid, and the trial court was therefore not required to allow Petitioner to withdraw his plea with respect to any of the charges. In other words, the partial remedy ordered by the trial court went beyond what was required by clearly established federal law.

Moreover, even if the requirement to register as a sex offender is considered

to be a direct consequence of the plea that the trial court was constitutionally required to inform Petitioner about during the plea hearing, Petitioner has not cited any Supreme Court authority–and the Court is aware of none–that prevented the trial court from remedying the alleged error in the manner that it did. The remedy fashioned by the trial court eliminated the requirement for Petitioner to register as a sex offender, leaving Petitioner to face only the consequences of the guilty plea disclosed at the plea hearing.

Petitioner has failed to demonstrate entitlement to habeas relief with respect to his first claim because it cannot be supported by clearly established Supreme Court law.

C. Presence of Petitioner at Post-Conviction Hearing

As the Court understands it, Petitioner's second claim asserts that he was denied his right to be present at critical stages of the proceedings when his appellate counsel waived his presence at his post-conviction motion hearing to withdraw his guilty plea. Petitioner argues that the error prevented him from presenting the additional claims discussed below to the trial court during the motion hearing. The claim is without merit.

The United States Supreme Court has recognized that a criminal defendant

has a fundamental right to be present at all critical stages of trial. See *Rushen v. Spain*, 464 U.S. 114, 117 (1983); see also *United States v. Riddle*, 249 F.3d 529, 534 (6th Cir. 2001) (a criminal defendant has a constitutional right to be present at "all stages of the trial where his absence might frustrate the fairness of the proceedings").

When the defendant is not confronting witnesses or evidence again him, however, this right is not absolute, but exists "whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (citations and quotations omitted). The right to be present is not guaranteed "when presence would be useless, or the benefit but a shadow." *Id*.; see also *United States v. Brika*, 416 F.3d 514, 526 (6th Cir. 2005). A defendant's presence at a hearing is "largely a matter of form" when a defendant's lawyer is present at proceedings which raise largely legal issues. *Cathron v. Jones*, 190 F. Supp. 2d 990, 1001-02 (E.D. Mich. 2002).

The United States Supreme Court has not specifically determined whether a defendant has a right to be present at a post-sentencing hearing on a motion to withdraw a guilty plea. At least some federal and state courts have rejected the notion. See *Spight v. Stovall*, No. 2:07-CV-14230, 2008 U.S. Dist. LEXIS 47310, 2008 WL 2447151, *3 (E.D. Mich. June 18, 2008) (citing *Hunt v. United States*,

237 F.2d 267, 268 (4th Cir. 1956); *United States v. Shillitani*, 16 F.R.D. 336, 340 (S.D.N.Y. 1954); *People v. Alcorta*, 147 Mich. App. 326, 330 (1985)).

The Court finds that Petitioner's presence was not constitutionally required at the post-conviction motion hearing. The hearing involved the legal issue of whether the failure to inform Petitioner of the requirement to register as a sex offender allowed him to withdraw his entire plea or only withdraw his plea with respect to the four relevant charges. Petitioner's appellate counsel ably argued Petitioner's legal position, and Petitioner's testimony was not necessary to resolve the motion. While Petitioner's counsel did not discuss the arguments discussed below, Petitioner was not prejudiced by the omissions because the additional claims are completely devoid of merit. Given these circumstances, the Court concludes that Petitioner's presence at the hearing would not have contributed to the fairness of the proceeding. The claim is therefore without merit.

D. Promise of Leniency

Petitioner's third claim asserts that his trial counsel, the prosecutor, and the trial court represented to him that he would receive a more lenient sentence than he actually received if he pled guilty. Petitioner supports this claim with an affidavit indicating that he only confessed to police when his attorney advised him to do so

after misrepresenting how his sentencing guidelines would be scored. Dkt. 1-2, at Page ID 305-06. He indicates that at the May 21, 2015, pretrial hearing, the trial court informed him that if he pled guilty he would only receive a sentence of two-thirds of his guideline range of 27 years. Id., at Page ID 307. He claims that subsequently the police requested his cooperation in his co-defendant's case, and he was promised a sentence of two-thirds of 17 years if he pled guilty. Id., at Page ID 309-10.

These allegations fail to establish entitlement to relief because Petitioner denied under oath during the plea hearing that there were any promises made to him in order to induce his guilty plea that were not placed on the record. Absent extraordinary circumstances, or some other explanation as to why a defendant did not reveal other terms when specifically asked to do so by the trial court, a plea agreement consists of the terms revealed in open court. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986). Petitioner expressly denied the existence of any off-the-record promises at the time of his plea when queried by the trial judge, and the Court must accept Petitioner's on-the-record denials over his new off-the-record allegations. See *Phipps v. Romanowski*, 566 F. Supp. 2d 638, 647 (E.D. Mich. 2008). Furthermore, in light of the trial court's statements at the plea hearing regarding the *Cobbs* evaluation being the only promise made to induce the plea,

Petitioner cannot demonstrate that he reasonably believed that he would receive the particular sentence he now claims his counsel promised him. *McAdoo v. Elo*, 365 F.3d 487, 497 (6th Cir. 2004); *Wright v. Lafler*, 247 F. App'x 701, 705-707 (6th Cir. 2007). Finally, even if it were true that Petitioner's trial counsel misled him regarding the sentence he would receive, the state court's proper plea colloquy cured any misunderstandings that Petitioner had about the consequences of the plea. *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999). Petitioner has therefore failed to demonstrate entitlement to habeas relief with respect to this claim.

E. Trial Court's Participation in Plea Bargaining

Petitioner's final claim asserts that the trial court was biased against him, and that it erroneously participated in plea negotiations.

With respect to the allegations of bias, the Supreme Court has explained that "opinions held by judges as a result of what they learned in earlier proceedings" cannot alone establish "bias" or "prejudice" against an individual or his case. *Liteky v. United States*, 510 U.S. 540, 551 (1994). Petitioner does not point to anything in the record demonstrating that the trial court was biased against him.

The trial court's participation in the guilty plea proceeding was conducted in accordance with the *Cobbs* procedure allowing the parties to obtain a sentencing

evaluation from the court prior to pleading guilty. The record does not indicate that the trial court participated in the plea bargaining process beyond that permitted by *Cobbs*. In any event, the Supreme Court has expressly held that while the Federal Rules of Criminal Procedure prohibit judicial involvement in plea negotiations, the rule is "prophylactic" and not "compelled by the Due Process Clause or any other constitutional requirement." *United States v. Davila*, 569 U.S. 597, 610-11 (2013). As a consequence, Petitioner fails to demonstrate that any judicial participation created constitutional error. The claim is therefore without merit.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires that a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11, Rules Governing Section 2254 Proceedings. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which

issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists of reason would not debate the Court's conclusion that Petitioner has not met the standard for a certificate of appealability because his claims are completely devoid of merit. Therefore, the Court denies a certificate of appealability.

The Court will also deny permission to appeal in forma pauperis because any appeal of this decision could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V. Conclusion

Accordingly, the Court 1) **DENIES** Respondent's motion to dismiss, 2) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, 3) **DENIES** a certificate of appealability, and 4) **DENIES** permission to appeal in forma pauperis.

**SO ORDERED.**

s/Paul D. Borman
Paul D. Borman
United States District Judge

Dated:  January 24, 2018

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 24, 2018.

s/Deborah Tofil
Case Manager